The court incorporates by reference in this paragraph and adopts as
the findings and orders of this court the document set forth below.
This document was signed electronically on May 06, 2008, which may
be different from its entry on the record.

IT IS SO ORDERED.



Dated: May 06, 2008

**Arthur I. Harris**
**United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 07-18341 |
| | ) | |
| KESHA D. PARKS, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |

MEMORANDUM OF OPINION[1]

This case is currently before the Court on the debtor's motion for an award
of damages stemming from the refusal of Dominion East Ohio Gas to provide
utility service after the debtor filed for relief under Chapter 7. After an evidentiary
hearing on November 14, 2007, the Court ordered Dominion to restore the debtor's
utility service within forty-eight hours, but deferred any decision as to whether the
debtor was entitled to further relief and requested additional briefing from the
parties on the issue of damages. For the reasons that follow, the Court awards

---

[1] This opinion is not intended for official publication.

damages in favor of the debtor and against Dominion in the amount of $3,090, pursuant to 11 U.S.C. § 362(k).

FINDINGS OF FACT[2]

From October 2003 to August 2007,[3] the debtor, Kesha Parks, received gas service from creditor Dominion without being billed and without making payments.  Dominion alleges that the debtor's gas meter was turned off and locked in October 2003, due to nonpayment, and that the debtor tampered with the locked meter, thereby receiving unauthorized gas service until August 2007.  Prior to October 2003, the debtor regularly received assistance from the Home Energy Assistance Program ("HEAP") to pay her winter gas bills.  In December 2006, the debtor contacted Dominion and requested a copy of her final gas bill in order to

---

[2] The findings of fact contained in this memorandum of opinion reflect the Court's weighing of evidence, including consideration of the credibility of the witnesses.  "In doing so, the court considered each witness's demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language, or nuance of expression."  *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court considered the testimony of all the witnesses, as well as all exhibits admitted into evidence.

[3] There is disagreement between the parties as to the date debtor's gas service was terminated. The debtor believes her gas was shut off in September 2007. Dominion believes gas service to the debtor's home was terminated on August 15, 2007.  The exact date of termination is immaterial for purposes of this motion.

2

receive assistance from HEAP for her electricity bill.  At this time, someone at Dominion realized that the debtor was receiving unauthorized gas, but Dominion did not immediately act on the information.  Eight months later, on August 16, 2007, gas service to the debtor's upstairs unit was terminated by disconnecting service to the entire house at the curb.  On September 8, 2007, Dominion gained access to the debtor's home and reinstated service to the lower unit, and, at the same time, turned off service to the upstairs unit and placed a lock on the meter.

Based upon the testimony of Steve Simon, a revenue protection investigator with Dominion, and billing records received into evidence, the Court finds by a preponderance of the evidence that Dominion continued to make regular remote readings from the debtor's meter.  For example, when Dominion sent debtor a bill for $4,076.59 for gas usage from August 24, 2006, to September 8, 2007, it calculated the debtor's gas usage based on a remote reading on August 24, 2006. The Court infers from this and other evidence that Dominion did not actually shut off the debtor's gas service in October 2003 and that no one tampered with the debtor's gas meter.  Rather, Dominion had information, *i.e.*, regular remote readings it took from the debtor's gas meter, from which it could have determined that debtor's gas service continued after October 2003.  Nevertheless, Dominion continued to act as if debtor's service was shut off and did not send the debtor

3

regular bills for the gas usage Dominion continued to record through remote readings. At the same time, the debtor was well aware of the fact she was receiving gas service from Dominion without being billed and without any payments by her. The debtor did not contact Dominion until December 2006, when she was told she needed a current gas bill to receive a low-income subsidy for her electric bill.

On October 31, 2007, the debtor filed a petition under Chapter 7 of the Bankruptcy Code. Dominion was listed as an unsecured creditor on debtor's Schedule F. After filing her bankruptcy petition, the debtor contacted Dominion and requested that her gas service be restored. Dominion informed the debtor that gas service would not be restored until debtor paid restitution for the final year of unauthorized service ($4,076.59).

On November 5, 2007, the debtor filed a motion for an order to show cause why Dominion should not be held in contempt for violation of 11 U.S.C. §§ 362(a) and 366, and requested an emergency hearing. The Court issued a marginal order granting the debtor's motion, and an emergency hearing was scheduled for November 14, 2007. On November 8, 2007, Dominion filed an objection to the debtor's motion alleging that Dominion had a legal right to demand restitution and to refuse to provide gas service because the debtor tampered with a locked gas

4

meter and received unauthorized service for almost four years. At the emergency hearing, the Court found it more probable than not that the debtor did not tamper with the gas meter. The Court held that Dominion violated 11 U.S.C. § 366(a), and ordered Dominion to restore service within 48 hours. The Court deferred any decision as to whether the debtor was entitled to further relief and requested additional briefing from the parties on the issue of damages.

On December 4, 2007, the debtor filed a motion to assess damages against Dominion for willful violation of 11 U.S.C. § 362(a) seeking:

1. Actual damages in the amount of $90.00;

2. Non-economic damages supplemented by affidavit;

3. Attorney's fees in the amount of $3,000.00; and

4. Punitive damages in the amount of $10,000.00.

On December 14, 2007, Dominion filed an objection to the debtor's motion to assess damages arguing that a utility's violation of 11 U.S.C. § 366 does not constitute a violation of section 362 as a matter of law.[4] On January 11, 2008, the Court held a teleconference with counsel for both parties to determine if an

---

[4] Dominion also argues that the Court cannot award contempt sanctions based on a violation of section 105, because section 366 is not analogous to a court order. The debtor's motion, and the Court's finding, is based on a violation of the automatic stay under section 362, therefore Dominion's argument with respect section 105 will not be addressed in the Court's opinion.

5

evidentiary hearing was needed on the debtor's motion. Counsel agreed that an evidentiary hearing was unnecessary and requested that the Court issue its ruling based upon the parties' existing briefs and the testimony from November 14, 2007. The Court deemed the matter heard and submitted. On January 23, 2008, the debtor filed a supplement to her motion to assess damages requesting an additional $2,620.00 in attorney's fees. The Court permitted additional time for Dominion to respond. On February 4, 2008, Dominion filed a response in opposition to the debtor's request for additional attorney's fees.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## DISCUSSION

The Court may impose damages for violation of the automatic stay under 11 U.S.C. § 362. The filing of a bankruptcy petition gives rise to the automatic stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). Subsection 362(k)(1) (formerly subsection 362(h) prior to the 2005 bankruptcy

6

amendments) provides:

> . . . an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

*See In re Sharon,* 234 B.R. 676, 687-88 (B.A.P. 6th Cir. 1999) (upholding a bankruptcy court's imposition of damages against a creditor that refused to return a repossessed car postpetition).

Under 11 U.S.C. § 362(k)(1), the individual seeking damages has the burden of establishing three elements by a preponderance of the evidence: (1) the actions taken were in violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual damages. *See Clayton v. King (In re Clayton)*, 235 B.R. 801, 806-7 & n.2 (Bankr. M.D.N.C. 1998); *see also In re Pawlowicz*, 337 B.R. 640 (Bankr. N.D. Ohio 2005); *Hampton v. Yam's Choice Plus Autos, Inc. (In re Hampton)*, 319 B.R. 163, 170-71 (Bankr. E.D. Ark. 2005).

In her motion, the debtor argues that Dominion's violation of 11 U.S.C. § 366 for refusal to provide gas service until debtor paid charges for prior unauthorized use is a violation of the automatic stay under 11 U.S.C. § 362. Dominion contends that a utility's violation of 11 U.S.C. § 366 does not constitute a violation of section 362 as a matter of law; and because section 366 does not contain a damages provision, the debtor's motion should be denied. To resolve the

7

issues raised by the debtor's motion, the Court must decide: (1) whether

Dominion's actions in violation of section 366 also constitute a violation of section

362; (2) if Dominion has violated section 362, whether such violation was

"willful"; and (3) whether the debtor is entitled to damages and attorney's fees.

### DOMINION'S ACTIONS CONSTITUTE A VIOLATION OF THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(a)(6)

Section 366 of the Bankruptcy Code provides in pertinent part:

> (a) . . . [A] utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such a utility for service rendered before the order of relief was not paid when due.

"The purpose of section 366 is to prevent the threat of termination from being used

to collect prepetition debts while not forcing the utility to provide services for

which it may never be paid." *Begley v. Phila. Elec. Co. (In re Begley)*, 760 F.2d

46, 49 (3d Cir. 1985). "Congress sought to strike a balance, in enacting § 366,

between the general right of a creditor to refuse to do business with a debtor

postpetition, and the debtor's need for utility service." *In re Jones*, 369 B.R. 745,

748 (1st Cir. BAP 2007). "The subject matter of § 366 received special treatment

because Congress recognized both that utility service is essential to a minimally

acceptable standard of living and that such services are often available only from a

single source." *Whittaker v. The Phila. Elec. Co. (In re Whittaker)*, 882 F.2d 791,

8

794 (3d Cir. 1989).

At first blush, the question whether Dominion violated section 362(a)(6) may seem to be an easy one. Section 362(a)(6) imposes a broad stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case," and certainly Dominion's refusal to restore gas service unless the debtor paid her bill for a year of prepetition gas service is an act to collect a prepetition claim against the debtor. Indeed, if Dominion's insistence on payment had nothing to do with alleged tampering or unauthorized use, then this would truly be a simple question. *See In re Tarrant*, 190 B.R. 704, 708 (Bankr. S.D. Ga. 1995) (utility's demand for payment of prepetition debt as a condition to restoring service is a violation of section 362(a)(6)); *In re Lanford*, 10 B.R. 129, 131 (Bankr. D. Minn. 1981) (same).

While no one disputes that a utility can refuse service under section 366 for tampering or unauthorized use, the tougher question, is whether a utility can refuse service *for nonpayment of utility service* stemming from the tampering or unauthorized use. *Compare FCC v. Nextwave Personal Communications, Inc.*, 537 U.S. 293, 301-02 (2003) and 3 *Collier on Bankruptcy* (15th Ed. Rev.) at

9

¶366.06[5] (implying utility's underlying motive may be irrelevant, once utility conditions restoration of service on payment for prepetition service), *with, e.g.*, *In re Morris*, 66 B.R. 28, 29 (Bankr. E.D. Mich. 1986) ("Since the evidence indicates that the debtors were aware of the tampering, restitution is a proper condition for restoration of service.").  Under section 366 a utility is permitted to refuse service "for any reason which would validly constitute a ground for refusal if that debtor were not in bankruptcy, with the single exception of nonpayment for past services."  *Hennen v. Dayton Power & Light Co.*, 17 B.R. 720, 724 (Bankr. S.D. Ohio 1982).[6]  Arguably, a utility is in violation of section 366 if it conditions restoration of service on payment of a prepetition debt for services rendered,

---

[5] "Certainly, if the utility has recently offered to provide service to the debtor upon the payment of all or part of a debt, that is strong evidence that the true reason for the denial is nonpayment." 3 *Collier on Bankruptcy* (15th Ed. Rev.) at ¶366.06.

[6] *See also FCC v. Nextwave*, 537 U.S. at 301-02 (in interpreting analogous nondiscrimination provision applicable to governmental units, 11 U.S.C. § 525(a), Supreme Court rejected FCC's argument that it had a valid regulatory motive for cancellation of the debtor's licenses).

> When the statute refers to failure to pay a debt as the sole cause of cancellation ("solely because"), it cannot reasonably be understood to include, among the other causes whose presence can preclude application of the prohibition, the governmental unit's *motive* in effecting the cancellation. Such a reading would deprive § 525 of all force. . . . Section 525 means nothing more or less than that the failure to pay a dischargeable debt must alone be the proximate cause of the cancellation . . .  whatever the agency's ultimate motive in effecting the cancellation.

537 U.S. at 301-02.

whether or not those services were "authorized." However, if such action *is* permitted under section 366, it presumably would not constitute a violation of the more general stay provision under section 362(a)(6).[7]

Under at least some case law interpreting the more specific provision of section 366, a utility *may* condition the restoration of service on the payment of a prepetition debt stemming from tampering or unauthorized use. *See Memphis Light, Gas & Water Div. v. Farley*, 135 B.R. 292, 294 (Bankr. W.D. Tenn. 1991) (debtor had arranged for neighbor to illegally connect her utility services after they had been disconnected for nonpayment); *Hendrickson v. Philadelphia Gas Works*, 672 F. Supp. 823, 834 (E.D. Pa. 1987) (someone without utility's permission or knowledge had restored gas service and tampered with meter so that usage could not be recorded); *In re Morris*, 66 B.R. at 29 (electric meter had been illegally

---

[7] For example, under section 366, a utility could presumably refuse to restore service because of an unpaid debt for damaged equipment stemming from an illegal attempt to reconnect a gas line. Such a debt for damaged equipment presumably would not constitute a debt owed to such utility "for service rendered" under the literal language of section 366(a). On the other hand, any such exception to the automatic stay would be limited to a refusal to provide service postpetition, since nothing in section 366 authorizes other actions to collect or recover a prepetition debt. Nor would the fact that the utility believes the debt to be nondischargeable provide an exception to the automatic stay. *See Andrews Univ. v. Merchant* (*In re Merchant*), 958 F.2d 738, 741-42 (6th Cir. 1992) (violation of § 362 arises when prepetition creditor withholds student-debtor's transcript prior to determination that debt is excepted from discharge).

11

by-passed); *In re Webb*, 38 B.R. 541, 544 (Bankr. E.D. Pa. 1984) (gas service had been illegally turned back on twice); *In re Scearce*, No. 05-11059, 2005 WL 4030139 (Bankr. S.D. Ohio Aug. 15, 2005) (electric service had been illegally reconnected by tampering with utility equipment). *See also In re Broadnax*, 37 B.R. 909 (Bankr. E.D. Pa. 1984) (after gas service was shut off for nonpayment, stolen gas meter was installed at debtor's home allowing occupants to receive stolen gas undetected by gas company; however, absent evidence that debtor, who was living in another city at the time, was engaged in the illegal activity or authorized it, court ordered utility to restore debtor's gas service). This type of payment is often authorized under section 366 as restitution for the debtor's criminal or dangerous behavior, and not as payment of a prepetition debt for services rendered. *See Hendrickson*, 672 F. Supp. at 834 (no violation of section 366 where utility demanded restitution based on its role as a victim of crime); *In re Webb*, 38 B.R. at 543-44 (no violation of section 366 where utility demanded restitution for digging and other costs incurred by the utility as a result of debtor's dangerous tampering).

Fortunately, in deciding this case, the Court need not determine whether, under section 366, a utility can refuse service for nonpayment of service stemming from tampering or unauthorized use, or what conduct *permitted* by section 366(a)

12

might otherwise be excepted from the more general prohibitions of section 362(a). Rather, as explained more fully below, unlike the case law cited above, Dominion's specific conduct in this case is not permitted by section 366(a) and in fact constitutes a violation of section 362(a)(6).

When the Court ruled on November 14, 2007, that Dominion violated section 366(a), the Court distinguished the facts of this case from the facts of cases cited by Dominion, in which other debtors had admitted to tampering with a meter, illegally reconnecting to a utility line that had been disconnected, or directly benefitting from someone engaging in such conduct. *See Hendrickson v. Phila. Gas Works*; *In re Morris*; *In re Webb*; *In re Scearce*. Unlike those situations, here the Court found that, for some reason, Dominion simply failed to effect its intended shut off of the debtor's service back in 2003. As a result, the debtor continued to receive uninterrupted gas service, for which she was not billed, without any tampering or illegal reconnection of gas lines by her or by someone acting on her behalf. Dominion continued to act as if the debtor's service was shut off and did not send the debtor regular bills for gas usage, which Dominion continued to record through remote readings. At the same time, the debtor was well aware of the fact she was receiving gas service from Dominion without being billed and without any payments by her. This situation continued until the debtor

13

called Dominion in 2006 to request a current gas bill, and someone at Dominion finally realized that the debtor was still getting gas service, which led to Dominion eventually shutting off gas service to the debtor in August 2007.

While Dominion may have believed that the debtor, or someone connected with the debtor, was responsible for illegally restoring gas service that it had actually shut off in 2003, the Court found, by a preponderance of the evidence, that this did not happen. In addition, the Court gave both parties the opportunity to submit additional evidence after the November 14, 2007, emergency hearing; however, Dominion chose not to supplement the record. Thus, while the Court has no way of knowing for sure what happened in 2003, the Court again finds, based on the testimony and other evidence, that the most likely scenario is that Dominion simply failed to effect its intended shut off of gas service to the debtor back in 2003.

Whether the circumstances in the current case are characterized as "unauthorized service," "stolen service," or just "unbilled service" the Court believes that these circumstances are factually distinguishable from the case law cited by Dominion, which involved tampering and other dangerous acts by or on behalf of the debtors, as opposed to an oversight or negligence by the utility, as in the present case. Thus, even though some of the cases cited by Dominion include

14

language suggesting that a utility may refuse service under section 366 for nonpayment of a debt stemming from "tampering and/or unauthorized use," *see*, *e.g.*, *In re Webb*, 38 B.R. at 544-45 (upholding utility's policy of requiring payment of restitution in cases of tampering and authorized use); *In re Scearce*, 2005 WL 4030139 at *1 ("it is well-settled that a utility may refuse service to a debtor if the utility is able to prove that tampering and/or unauthorized utility usage took place on the debtor's property"), the Court believes that the circumstances in this case are distinguishable enough to effect a different outcome. *Compare In re Webb*, 38 B.R. 541 (debtor was directly responsible for tampering with utility equipment and gas theft), *with In re Broadnax*, 37 B.R. at 911-12 (court ordered utility to restore debtor's gas service due to lack of evidence that debtor was engaged in the illegal activity or authorized it). To the extent that the "unauthorized use" language in the cases cited by Dominion might support Dominion's actions under the facts of the present case -- *i.e.*, where debtor received uninterrupted utility service without any tampering or illegal reconnection of gas lines by her or anyone acting on her behalf, this Court respectfully disagrees.

Accordingly, the Court concludes that Dominion's demand for payment of a prepetition debt as a condition to restoring gas service to debtor's home, after receiving notice that the debtor had filed a petition under Chapter 7 of the

15

Bankruptcy Code, constitutes both (1) a refusal to provide service solely on the basis "that a debt owed by the debtor to such a utility for service rendered before the order of relief was not paid when due" in violation of section 366 and (2) an action to collect a claim against the debtor in violation of 11 U.S.C. § 362(a)(6).

## DOMINION'S VIOLATION OF THE STAY WAS "WILLFUL"

"A violation of the automatic stay can be willful when the creditor knew of the stay and violated the stay by an intentional act." *In re Sharon,* 234 B.R. at 688. "As used in [current subsection 362(k)], 'willful,' unlike many other contexts, does not require any specific intent." *In re Bivens*, 324 B.R. 39, 42 (Bankr. N.D. Ohio 2004); *see In re Sharon*, 234 B.R. at 687-88 (creditor's belief that its action would not violate stay does not preclude a finding that creditor's action was "willful" within meaning of section 362(k)); *see also Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 618 (9th Cir. 1993); *Lansdale Family Rests., Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.)*, 977 F.2d 826, 829 (3d Cir. 1992). The debtor bears the burden of establishing by a preponderance of the evidence that the violation of the automatic stay was willful. *See In re Johnson,* 501 F.3d 1163, 1172 (10th Cir. 2007).

The debtor's bankruptcy petition was filed on October 31, 2007. Dominion was properly listed as an unsecured creditor on debtor's Schedule F, and was also

16

listed on debtor's creditor address matrix. Dominion was served with notice of the bankruptcy case on November 3, 2007. In addition, the debtor testified under oath that she contacted Dominion shortly after filing for bankruptcy to inform Dominion that a bankruptcy petition had been filed and to request that her gas service be restored. Dominion does not dispute that it was on notice that a bankruptcy petition had been filed. Dominion also does not dispute that after the debtor filed for bankruptcy, Dominion refused to restore service until the debtor paid Dominion $4,076.59 for gas service rendered before the bankruptcy from August 24, 2006, to September 8, 2007.

Even if Dominion believed in good faith that it was entitled to withhold gas service notwithstanding the debtor's bankruptcy, it still knowingly took acts in an effort to collect a prepetition debt after notice of the bankruptcy filing. The Court finds that Dominion had knowledge of the stay and that the violation of the stay was willful. *See In re Sharon*, 234 B.R. at 687-88. Thus, Dominion's actions amount to a willful violation of the automatic stay.

### THE DEBTOR IS ENTITLED TO ACTUAL DAMAGES FOR DOMINION'S WILLFUL VIOLATION OF THE AUTOMATIC STAY

#### Actual Damages

An award of actual damages is mandatory if the stay violation is willful. *In re Bivens*, 324 B.R. at 42; *In re Johnson*, 253 B.R. 857, 861 (Bankr. S.D. Ohio

17

2000); *see United States v. Harchar*, 331 B.R. 720 (Bankr. N.D. Ohio 2005) (costs and attorney's fees are regularly awarded as actual damages for violation of the stay); *In re Sharon*, 234 B.R. at 687-88 (upholding a bankruptcy court's imposition of damages against a creditor for violation of the automatic stay). However, an award must be reasonable and supported by the evidence. *Archer v. Macomb County Bank*, 853 F.2d 497, 499 (6th Cir.1988). Dominion willfully violated the automatic stay when it attempted to collect a prepetition claim after receiving notice that the debtor had filed a Chapter 7 bankruptcy petition. Thus, the debtor is entitled to actual damages, including costs and attorney's fees, resulting from Dominion's violation of the automatic stay.

While Dominion challenges the debtor's legal right to any damages, Dominion does not specifically contest the reasonableness of the debtor's original request for attorney's fees in the amount of $3,000, and the Court finds this amount to be reasonable. Nor does counsel's agreement to represent the debtor *pro bono* mean that counsel cannot be awarded attorney's fees under fee-shifting statutes such as 11 U.S.C. § 362(k)(1). *See Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) (pro bono representation does not bar the award of a reasonable attorneys fees); *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (attorneys fees may not be reduced because the attorney conducted the litigation pro bono). Likewise, the Court finds

18

the debtor's request for actual damages in the amount of $90.00, for lost wages and transportation costs to attend the hearing on November 14, 2007, to be reasonable.

On January 23, 2008, debtor's counsel filed a supplemental motion requesting fees in the amount of $5,620.00, almost double the amount initially requested. The supplemental motion was submitted almost four weeks after the debtor filed her original motion to assess damages. Debtor's counsel states that the additional time was not included in the original motion filed on December 4, 2007, because the time had not been uploaded into counsel's computer. The Court would expect an attorney to know, generally, how much time she has spent on a case. Here, counsel overlooked nearly half of the hours spent on the case, and did not notice the error until almost four weeks later. This is not a math error. Nor is this a situation where counsel seeks supplemental fees for work performed after filing the initial fee application. Nor does this type of error warrant consideration under excusable neglect, particularly since attorney Gray submitted an affidavit under penalty of perjury stating that a total of 15 hours had been spent drafting and arguing the debtor's motion, not the 28 hours she is now claiming. Counsel's request for additional fees is therefore denied as untimely.

For the reasons stated above, the Court finds that the debtor is entitled to actual damages, including attorney's fees, however, the supplemental request for

19

$2,620.00 in additional fees is denied as untimely. The Court awards damages in favor of the debtor, Kesha Parks, and against Dominion, totaling $3,090.00 ($3,000.00 for attorney's fees and $90.00 for actual damages), pursuant to subsection 362(k).

*Emotional Damages*

Subsection 362(k) (formerly subsection 362(h) prior to the 2005 bankruptcy amendments) states that the Court shall award "actual damages" for a willful violation of the automatic stay. After examining the language of the statute, the legislative history, and the relevant case law, the district court in *Harchar* concluded that " 'actual damages' referenced in [current subsection 362(k)] do not include those intangible damages arising from injury to one's peace of mind." *Harchar*, 331 B.R. at 722. While the *Harchar* decision technically may not be binding precedent, *compare, e.g., In re NHB, LLC*, 287 B.R. 475, 479-80 (Bankr. E.D. Mo. 2002) (bankruptcy courts in multi-judge districts are not bound by the decision of a single district court); *In re Gaylor*, 123 B.R. 236, 241-43 (Bankr. E.D. Mich. 1991) (same), *with, e.g., In re Shunnarah*, 273 B.R. 671, 672-73 (Bankr. M.D. Fla. 2001) (bankruptcy courts are bound to follow published decision of a single district court in a multi-judge district until another district judge publishes a contrary opinion); *In re Phipps*, 217 B.R. 427 (Bankr. W.D.N.Y. 1998)

20

(same); *In re Muskin, Inc.*, 151 B.R. 252 (Bankr. N.D. Cal. 1993) (explaining why bankruptcy judges should follow their circuit's bankruptcy appellate panel decisions, absent a conflicting ruling by the district court), this Court sees no reason to take a position contrary to *Harchar* on this issue, which has created a split both at the circuit level and among the bankruptcy courts within this circuit. *See Harchar*, 331 B.R. at 726-28 .

In her affidavit, the debtor describes an incident where a pillow caught on fire by a space heater. The debtor testified that her family was using several space heaters to heat the home in the absence of natural gas to run the furnace. Debtor requests "funds that would fairly compensate our aggravation, grief and fright from this incident." Even if a reviewing court were to find that emotional damages were recoverable under 11 U.S.C. § 362(k), the facts of this case still would not sustain an award for emotional distress under the test used by most courts that permit such claims. *See*, *e.g.*, *In re Pawlowicz*, 337 B.R. at 646-47 ("in the absence of highly unusual circumstances, strong corroborating evidence must be offered, usually in the form of medical evidence to sustain an award of damages for emotional distress") (citing *Patton v. Shade*, 263 B.R. 861, 867 (Bankr. C.D. Ill. 2001)). Therefore, the Court denies the debtor's request for emotional damages.

21

*Punitive Damages*

The Court declines to award punitive damages. *See Archer*, 853 F.2d at 500 (finding punitive damages appropriate if actual damage amount would not deter the creditor's "deliberate and repeated violations of the automatic stay"); *In re Bivens*, 324 B.R. at 42 ("[T]he imposition of punitive damages is not an action to be taken lightly, and ... this Court has always exercised great restraint in making such an award.... [C]ases in which punitive damages have been awarded involve conduct that is egregious, vindictive, or intentionally malicious."). Dominion's conduct in this case, although willful, was not egregious or intentionally malicious. Dominion had a good faith belief that it was entitled, consistent with the Bankruptcy Code, to refuse service to the debtor and to demand payment based on allegations of tampering and unauthorized use. Thus, the Court denies the debtor's request for punitive damages.

## CONCLUSION

For the foregoing reasons, Dominion Ohio Gas willfully violated the stay, and the debtor, Kesha Parks, is awarded actual damages, including attorney's fees, in the amount of $3,090.00 pursuant to 11 U.S.C. § 362(k)(1). The debtor's request for an award of additional attorney's fees, emotional damages, and punitive damages is denied.

IT IS SO ORDERED.